## ANNA CLAPP *v.* WILLIAM CLAPP & OTHERS.

A father, having devised certain real estate to S. C., one of his sons, "subject to the restrictions and incumbrances hereinafter pointed out and explained," in a subsequent clause of his will declared: "my mind and will is, and I hereby declare the same, that provided *my daughter, A. C.* shall, at any time hereafter, choose to live in the family of my son S. C. she shall have the right so to live; and the estate herein given to my said son S. C. shall be subject to that incumbrance during her life, or so long as she shall remain single or unmarried." *Held,* that A. C. had a permanent right to a support out of the estate devised to S. C. not dependent upon the life of S. C., or the keeping together of his family; the living in the family being designed to signify rather the kind of support to which A. C. was entitled, than its duration, which was expressly declared to be for her life, or so long as she should remain unmarried; and that the court would enforce this charge against the real estate so devised, in the hands of the heirs of S. C. and purchasers and devisees of purchasers of the same from him.

BILL IN EQUITY to enforce against certain lands, in Warwick, being part of the homestead farm of John Clapp, late of said Warwick, deceased, a charge imposed thereon by his will, for the support and maintenance of the complainant so long as she should live, and remain unmarried.

By his last will and testament, dated the third day of September, 1817, and after his death duly proved, John Clapp, the father of the complainant, devised to his son, Silas Clapp, in fee, a certain part of his homestead farm, which he particularly described, " subject to the restrictions and incumbrances herein-

after pointed out and explained"; and by a subsequent clause in his will, declared as follows :—

" Item.　My mind and will is, and I hereby declare the same, that provided my daughter, Anna Clapp shall, at any time hereafter, choose to live in the family of my son Silas Clapp, she shall have the right so to live; and the estate herein given to my said son Silas Clapp, shall be subject to that incumbrance during her life, or so long as she shall remain single or unmarried."

The bill was filed against the purchasers, and devisees of purchasers, of the estate of Silas Clapp, devised to him as above by the will of John Clapp, and against his heirs at law; and the case being heard upon bill and answer, it appeared from the answers, that in 1840, Silas built a house adjoining said estate, to which the complainant was in the habit of resorting and living with the family of said Silas whenever she pleased, up to the time of the death of said Silas, which took place on the 8th day of October, 1853, never making any further claim for support; but that since his death, the complainant had claimed compensation and allowance out of the estate so devised to said Silas as aforesaid.　The question made was, whether, by the will of Jonathan Clapp, the estate devised to Silas was charged with the support of the complainant during her life and whilst she remained unmarried, or whether, all that was secured to her was a mere right to live in the family of Silas, which ceased upon his death, when his family was broken up.

The bill was originally filed in the county of Kent, but was by consent removed to the county of Providence and there heard.

*Tillinghast & Bradley,* for the complainants.

*T. A. Jenckes,* for the respondents.

*Tillinghast & Bradley,* for the complainant.

1. The clause of the will upon which this bill is founded clearly raises a trust in favor of the complainant.　The testator has charged the land in express words.　The property and the object are both certain, and in such case it is well settled that a trust is created.　2 Story, Eq. Juris. sec. 1068 a; *Harland*

v. *Trigg*, 1 Bro. Ch. Cas. 142; *Wynne* v. *Hawkins*, Id. 179; *Pierson* v. *Garnett*, 2 Bro. Ch. Cas. 38.

2. The land is bound by the trust in the hands of the respondents. 1 Story, Eq. Juris. sec. 395; Hill on Trustees, 398, (282).

*T. A. Jenckes* for the respondents.

1. The intention of the testator must be gathered from the whole will; and having, by other clauses in his will, made provision, by specific devises and bequests, for the support and maintenance of the complainant, the language of the clause on which she founds her claim cannot be construed into an intention on the part of the testator to make her support and maintenance a charge on that portion of the homestead estate devised to Silas Clapp. It is a universal principle in the construction of wills, that the *intention* of the testator is to govern whatever may be the language he may use. 1 Jarman on Wills, 315; *Bowley* v. *Sammon*, 3 H. & J. 4; *Moore* v. *Dudley*, 2 Stewart, 170; *Finley* v. *King*, 3 Peters, 346. And it is equally well established, that that intention is to be gathered from the whole will, and not from any parts or parcels thereof. 2 Jarman on Wills, 737–741; 2 Roper on Legacies, 1459, and cases there cited. It was clearly the intention of this testator to give each child the means of support. To this complainant, he left a provision as ample as his means and justice to his other children would allow. He left her one ninth of his farm and one seventh of his new dwelling-house. His object then, in this clause, must be explained by the context, and governed by the intent as gathered from the whole will. That intent being shown, any expression which, by itself, might be construed into an intent different from, or inconsistent with such general intent, will be rejected, or will be construed in accordance with the general intent. 1 Jarman on Wills, 411 and note; 2 Williams on Executors, 788; 2 Roper on Legacies, 1461–2, and cases there cited; see also *Hawley et al.* v. *Northampton*, 8 Mass. 37; *Cook* v. *Holmes*, 11 Mass. 530. It was the wish of the testator, although not expressed in such language as to make it an obligation on his devisees, that the estate should remain in the hands of his children. To Silas

he had given a large portion of his homestead estate, and wishing that his daughter Anna, the complainant, should have a home in his family, if she wished it, he directed that she should have the right to such a home, but with no intention that her support and maintenance should be a charge on the estate. The words " she shall have the right so to live," cannot be construed into any provision for a support for her, to be raised out of the estate devised to Silas Clapp. The complainant appears to contend that this clause created a trust in her favor. The words " she shall have the right so to live," and " I give the estate subject to that incumbrance," are not words creating an express trust. The trust, if any, must have been an implied one. It is a well-settled rule, applicable to real as well as personal estate, that where a trust is created by *implication*, it must be a necessary implication. 2 Roper on Legacies, 1496. To create a trust by implication, the words must be imperative, the subject and object certain. Hill on Trustees, 71 ; Jarman on Wills, ch. xii. *passim.* Are the words of this clause of such an imperative nature as to create a trust for the *support and maintenance* of this complainant? for it should be borne in mind that it is *support and maintenance* that she claims. But even if they did create a trust, did not that trust cease at the death of Silas Clapp ? Can words so vague and indefinite as to the amount of her interest, be construed into a trust, which trust was to continue after the death of the head of the family in which the complainant was to live ? Can the words " live in his family," be construed to mean a trust for support and maintenance *out* of that family ?

2d. The proviso, that the complainant should choose to live in the family of Silas Clapp, was, *in the nature of a condition precedent,* the performance of which became impossible, on the death of said Silas; and having become impossible, the incumbrance on the estate was removed. By the terms of this clause, it is provided, that this complainant shall first choose to live in the family of her brother. The word family, may, according to the context, have different significations in different wills. Hill on Trustees, 78, citing Sir Wm. Grant in *Cruwys* v. *Colman,* 9 Ves. 323. By the context, provision has been

made for this complainant; the object of this clause was to give her a home with her brother. It was not to extend beyond his life; and the word family, here, should be taken to mean the family of Silas Clapp while he remained its living head. By his death, the performance of this condition became impossible ; and where a condition becomes impossible to be performed, no estate or interest vests. 1 Roper on Legacies, 755, citing Swinb. on Wills. Conditions precedent are such as must happen or be performed, before the estate can vest or be enlarged. And where the act is previous to any estate, or that act consists of several particulars, each must be performed. *Vanhorne* v. *Dorrance*, 2 Dall. 37. Even though a condition precedent becomes impossible, yet no estate or interest grows therefrom. 1 Jarman on Wills, (note) 797 ; see *Moakley* v. *Riggs*, 19 Johns, 71, 72 ; *Taylor* v. *Bullen*, 6 Cowen, 627. The complainant, therefore, must show that she chooses to live in the family of Silas Clapp, and that she is living there. This she cannot do ; for, by the death of said Silas, the *family*, as that word should be construed in this will, ceased to be. She admits this in her bill ; she admits that the family is scattered, and has no place of abode. By admitting this, she shows, in effect, that there is no family of Silas Clapp, and that there being none, the condition has become impossible, and the incumbrance removed. The performance of this condition was the motive, so to speak, which led the testator to make this clause part of his will. In such a case, the condition having become impossible, no estate can be taken. 1 Williams on Executors, 907.

3d. The portion of this clause making it necessary for this complainant to " choose to live in the family of Silas Clapp," and the subsequent portion making the estate " subject to that incumbrance during her natural life," are clearly repugnant and inconsistent with each other, and, taken together, have no intelligible meaning; the clause is uncertain, because of the indefinite quantity of the interest which the complainant is to take ; such repugnancy, inconsistency, and uncertainty cannot be explained or aided by any other portions of the will, nor by the intention of the testator, as gathered from the whole will ; and

the clause being thus repugnant, inconsistent, unintelligible, and uncertain, is void. The two portions of the clause taken together cannot be reconciled. They are absurd and unintelligible. They give to the complainant, provided she shall choose to live in her brother's family, the right so to do, and subject the estate to *that incumbrance.* What incumbrance ? The choice of living in her brother's family, and the right so to live, are not words which can create a trust, charge an estate with maintenance or support, or evolve any meaning by which a testator's intention can be gathered, or that intention executed. See 1 Jarman on Wills, 414. *Bartlett* v. *King,* 12 Mass. 537. Repugnant words may be struck out as surplusage where the admission of a loose phrase would go to alter a large, plain, and particular disposition before expressed. *Green* v. *Amstead,* Hob. 65 ; *Countess of Bridgewater* v. *Duke of Bolton,* 5 Mod. 100, cited in note to *Holmes* v. *Craddock,* 3 Ves. Jr. 321. " The large, plain, and particular disposition" was the devise to Silas, and the provision for the complainant. And see, generally, as to cases where general intent will always control particular, and will set aside words or clauses manifestly interfering therewith, the authorities before cited. 1 Jarman on Wills, 411, note ; 2 Williams on Executors, 788 ; 2 Roper on Legacies, 1461–2, and notes. The interest which the complainant was to take is so indefinitely expressed as to render the clause uncertain and doubtful, and therefore void. Indefiniteness of this kind makes void the clause containing it. 2 Jarman on Wills, 323 ; *Hoffman* v. *Hankey,* 3 M. and K. 376 ; Jones ex dem. *Henry* v. *Hancock,* 4 Dow. 145. The clause is as indefinite as in those cases in which the will gives a " handsome gratuity." *Jubber* v. *Jubber,* 9 Sim. 503. The right to live in a family, gives no interest whose amount or extent can be arrived at with any certainty. Even though the court might be satisfied as to the intent, yet where it is not sufficiently expressed to enable them to execute it, the clause must be considered void. See remarks of Master of Rolls in *Holmes* v. *Craddock,* 3 Ves. Jr. 319.

BOSWORTH, J. The question arises in this case on the language of a devise or provision in the will of John Clapp. The testator devises a portion of his homestead farm with the build-

ings and appurtenances thereof unto his son Silas Clapp, in fee, subject to the restrictions and incumbrances thereinafter pointed out and explained. He then makes certain other devises and legacies, and inserts the following provision in his will, viz : " My mind and will is, and I hereby declare the same, that provided my daughter Anna Clapp shall, at any time hereafter, choose to live in the family of my son Silas Clapp, she shall have the right so to live, and the estate herein given to my said son Silas Clapp shall be subject to that incumbrance during her life, or so long as she shall remain single or unmarried."

It seems to us to be the plain intent of the testator to provide, by this language of his will, for the subsistence of his daughter Anna, and to make that subsistence a charge upon the estate which he had devised to his son Silas. This support is expressed to be for her life, or so long as she shall remain single and unmarried, and is dependent only upon the condition of her choosing to receive it.

This appears to be the plain intent of the testator, as apparent from the language of the will when he makes the devise to his son Silas, and when he makes provision for his daughter Anna. In the devise to Silas, he makes it subject to the restriction and incumbrance hereinafter pointed out and explained. When he makes the provision for his daughter Anna, he expressly charges it upon the estate devised to Silas, thus pointing out and explaining the incumbrance to which he had subjected the devise, and which was to be thereafter explained.

Now, the provision was, that she should have the right to live in his family ; and can the words, " live in his family," be construed to mean a trust for support and maintenance out of that family ? Silas Clapp has deceased, and his family are scattered and separated. The testator's language does not seem liable to be defeated by the happening of such events, for the estate is made chargeable with the incumbrance during the life, or until the marriage of Anna Clapp. If it could be defeated by the separation of the family of Silas Clapp, the bounty which the testator intended for his daughter during her life, or so long as she should remain single, would be dependent upon accident or upon the choice or caprice of Silas Clapp, whereas

the testator's language makes it dependent on her choice alone. The effect of the language, "right to live in his family." cannot, consistently with the apparent intent of the testator, be construed to limit the duration or extent of the testator's bounty; for independent of the consideration that this duration is fixed by the language of the testator, other considerations arise out of the nature of the incumbrance. Suppose, for instance, in the lifetime of Silas Clapp, and while his family was residing at the homestead, Anna Clapp had chosen to live in his family, and her application had been refused ? Would not the right of resort to the premises charged have been clear ? And is not the right to this resort equally clear when this right to live in the family is unattainable from any other circumstance, provided she chooses to enjoy the right?

It seems to us that the language of the will is sufficient to raise a trust for the subsistence of Anna Clapp. That trust is raised by the law of equity as an interest *in rem.* The provision of the will has both requisites to the raising of such a trust, viz : certainty as to the object of the trust, and certainty as to the subject of it. The object, was a living for Anna Clapp in the family of Silas Clapp, and the land devised to Silas, was the subject-matter out of which this living was to be furnished. Silas Clapp took the fee of the estate subject to this charge. If he satisfies the charge, the estate is discharged ; if he does not, the estate remains charged, and the claim or right is to be satisfied out of it.

It seems to us that the language, "right to live in the family," is more indicative of the kind of support or quantum of benefit intended, than of the extent or duration of it. The object was to provide a living or home for the testator's daughter so long as she should live, or until she should attain a position in which that object would be otherwise answered. A living was to be provided — a living in the family of the testator's son Silas ; and such support as she would have, by living in his family, is the measure or quantum of benefit intended. Nor does there seem to us any difficulty in ascertaining the amount of interest arising to Anna Clapp growing out of this charge upon the estate, with such certainty as will enable us to decree

the execution of the trust. It can be easily ascertained how much the support which she would receive by living in the family would cost; and that being ascertained, the extent of her interest is made certain, and can be enforced by a sale or rental of the land charged.

A decree must be entered declaring the real estate of the defendants, devised to Silas Clapp by the will of John Clapp, to be subject in their hands to the support of the complainant during her life, so long as she shall remain unmarried; and the case be sent to a master to ascertain the annual value of such support as was contemplated by said will, and in default of payment thereof, at the times and in the amounts to be reported by the master, said estate to be sold, &c. for the satisfaction of said charge.[1]

[1] A similar case was decided about the same time by the court of appeals in Maryland, as appears by the following note of it furnished to me by my friend, Mr. Miller, the reporter : —

"A testatrix devised a *farm* to W. in fee, and then after giving some personal property to C. added : '*Item.* I do hereby will and direct that the said C. *shall have a home* during her natural life *on the farm* hereinbefore bequeathed to W.' *Held :*

"1st. That this devise of a '*home*' is not void for *uncertainty,* nor is it confined to a mere *room* and *shelter* in the house on the farm, but extends to the *board* and *maintenance* of the devisee and is a *charge* upon the land therefor.

"2d. The sum to be awarded the devisee, as an annuity chargeable on the land, must bear a proper relation to the product of the latter ; the standard of her right is the *value* of the *home,* as she was habituated to it in the house of the testatrix.

"3d. In estimating this sum, regard must be had to the *manner* and *mode* of life of the devisee up to the death of the testatrix, the relative situation of the parties, according to the position they maintain in society, the condition and habits of life of the testatrix and the devisee, the extent of the estate, the mode of living of the parties, so far as expensiveness or economy is concerned, and the practice and habits of the persons with whom they associate. *Willett & Wife* v. *Carroll,* 13 Md. Rep. 459."—Reporter.